THE STATE v. ROY I. MCDANIEL, Appellant.—37 S. W. (2d) 441.

Division Two, March 25, 1931.

*Roy Clymer* and *James Booth* for appellant.

*Stratton Shartel,* Attorney-General, and *S. E. Garner,* Special Assistant Attorney-General, for respondent.

HENWOOD, J.—By an information filed in the Circuit Court of Crawford County, the defendant was charged with statutory rape. The jury found him guilty and assessed his punishment at imprisonment in the penitentiary for two years. He was sentenced accordingly, and appealed.

The evidence adduced by the State is substantially as follows:

At the time in question, the month of July, 1928, Katherine Bauer, the prosecutrix, was fourteen years of age. Her mother died when she was five years of age, and, at the time of the preliminary hearing, her father was living in New Jersey, "she thought." After her mother's death, she lived with her grandmother, Mrs. Dora Miller, at Coffeyton, in Crawford County. Her grandmother's home was located near the tracks of the "Frisco" Railroad Company. The defendant was married, and lived in St. Louis with his wife and four children. One of the children was his by a former marriage, and another one was his wife's by a former marriage. He was employed as a brakeman on the line of the "Frisco" extending from St. Louis, through Coffeyton, to Newburg, and he passed through Coffeyton frequently on "Frisco" trains. On some occasions, these trains stopped near the gateway or entrance to Mrs. Dora Miller's premises, and, in this way, he became acquainted with the members of the Miller family, including the prosecutrix. On July 4 and 5, 1928, the defendant and his son, Norman McDaniel, were visiting with the Miller family. They were there, upon the invitation of one of Mrs. Miller's sons, John or Ed Miller, to spend a few days fishing and hunting. About October 1, 1928, while the prosecutrix was visiting in the home of her aunt, Mrs. Jane Howard, in St. Louis, she told Mr. Harry Delashmitt, who lived in her aunt's home, that the defendant had sexual intercourse with her once on July 4, 1928, and twice on July 5, 1928, in her grandmother's home at Coffeyton. This was her first complaint concerning the alleged offense. An examination of the prosecutrix by Dr. R. P. Royse, of Bourbon, in Crawford County, on October 11, 1928, disclosed that she was pregnant, and also that she had "a venereal disease of a gonorrheal nature." On the same day, following the examination mentioned, the prosecutrix made the affidavit, before W. H. Sweetin, justice of the peace, which started this prosecution. She testified at the preliminary hearing, on November 30, 1928, but died in Isolation Hospital in St. Louis on January 14, 1929, several months previous to the trial in the circuit court. At the trial, W. H. Sweetin, justice of the peace, Oscar J. Stewart, prosecuting attorney, and other witnesses for the State, related, in substance, the testimony given by the prosecutrix at the preliminary hearing. According to these witnesses, the prosecutrix testified, at the preliminary hearing, that, in the afternoon of July 4, 1928, she and the defendant were in an upstairs room of the Miller home, where the defendant's son, Norman McDaniel, twelve years of age, and her cousin, Ida Dowler, thirteen years of age, were playing checkers; that the defendant sent Norman and Ida downstairs, and then began "monkeying" with her, and threw her on the floor, and had sexual intercourse with her; that, in the same room, he had sexual intercourse with her twice on the

following day, July 5, 1928; that she was pregnant as the result of her sexual intercourse with defendant; that she had never had sexual intercourse with any one else; that the defendant told her that, if she ever told what he had done to her, he would not do anything with her, but some one would; and that, because of this threat by the defendant, she did not complain sooner of defendant's mistreatment of her. Ida Dowler testified that the prosecutrix and the defendant were in the upstairs room of the Miller home in the afternoon of July 4, 1928, when she and Norman McDaniel were playing checkers, and that, when Norman went downstairs to put on his bathing suit, the defendant told her to go downstairs with Norman for a while, and that she went downstairs for a while, and left the prosecutrix and the defendant alone in the room. Mrs. Jane Howard and Mrs. Emily Wade both testified that the defendant and his wife came to the home of Mrs. Howard in St. Louis, a few days before the preliminary hearing, and that the defendant said he was guilty, and that he wanted to make a settlement with the prosecutrix, and that he couldn't help her any if he was put in prison, and that the prosecutrix could stay away from the preliminary hearing or testify in such a way as to bring about his acquittal. Five letters received by the prosecutrix from the defendant were admitted in evidence. All of the letters purport to have been written and mailed at Newburg, the first letter being dated "4-21-28," and the last letter being dated "8-20-28," and the other three being dated, respectively, "6-6-28," "6-13-28," and "6-24-28." The letters are written in terms of endearment, and, in each of them, the defendant acknowledges the receipt of a letter from the prosecutrix. The letter dated "8-20-28" contains the following statement: "I sure do love to see you and I think about when I was out there and wish I was there again." There was also admitted in evidence a card received by the prosecutrix from the defendant, containing printed statements which are vulgar and obscene in their nature.

The defendant did not testify. The evidence offered in his behalf tends to show that the defendant and his son, Norman McDaniel, were visitors in the home of Mrs. Dora Miller at Coffeyton from about noon July 3, 1928, until the morning of July 8, 1928. Mrs. Dora Miller, her son, John Miller, and the defendant's son, Norman McDaniel, testified that John Miller and the defendant went fishing on July 4th and July 5th, and that, on each of those days, they left the Miller home early in the morning and did not return until sundown or later. Norman McDaniel further testified that the defendant did not come upstairs in the Miller home and send him and Ida Dowler downstairs at any time on July 4th. Mrs. Miller further testified that, after the defendant visited in her home in July, 1928, she wrote to him and told him that the prosecutrix could not write any more letters to him. She did this because Mr.

Frank Fellhauer, who lived in her home, "raised such a racket" about it. She further testified that Mr. Fellhauer was "jealous of the girl and the one that disgraced her." Dr. R. P. Royse testified that his examination of the prosecutrix on October 11, 1928, led him to the conclusion that her pregnancy dated about six weeks back from the time of the examination, "possibly from the 15th of August to the latter part of August." Rudolph Walker, brother-in-law of the defendant, testified that Mr. Fellhauer called him at Eureka, Missouri, by telephone, and told him that the defendant was in trouble with a girl, and suggested that he (the witness) and his father "come up there and straighten it out." Mr. Harry Delashmitt testified that Mrs. Jane Howard and Mrs. Emily Wade asked him to call on the defendant and his wife, and request them to come to Mrs. Howard's home to talk about a settlement of the case, and that they (Mrs. Howard and Mrs. Wade) were talking about "getting the case settled out of court, and wanted some money." The defendant's wife testified that she and the defendant went to Mrs. Howard's home in St. Louis, at the request of Mr. Delashmitt, the evening before the preliminary hearing, but nothing was said, on that occasion, about money settlement of the case; that, when the defendant asked Mr. Wade what he thought about the case, Mr. Wade suggested that the defendant see the prosecuting attorney and arrange to keep the case out of court; and that she said she would not let the defendant attempt any such arrangement, because it would be considered an admission of his guilt.

Other evidence and the proceedings in connection therewith will be noted hereinafter.

I. The defendant complains of the action of the trial court in admitting in evidence the State's Exhibits E and F. Exhibit E purports to be a report of the chief physician of the venereal clinic, "Department of Public Welfare, Division of Health," of the City of St. Louis, dated October 25, 1928, to the chief probation officer of the juvenile court of the city of St. Louis, as to the results of "the Kohn test of Katherine Bauer," the prosecutrix. Exhibit F purports to be a "Health Record," dated October 25, 1928, relating to a physical examination of Katherine Bauer, the prosecutrix, made by another physician.

There was competent, undisputed evidence, before the jury, relating to the general physical condition of the prosecutrix, particularly her pregnancy and her affliction with a venereal disease. Therefore, the admission in evidence of the exhibits above mentioned, although improper, could not have been prejudicial to the defendant.

II. It is also urged that the trial court erred in limiting the cross-examination of the State's witness Fellhauer. The rulings specifically complained of appear in the following proceedings:

"Cross-Examination by Mr. Clymer:

"Q. Are you interested in the result of this case?

"By Mr. Lay (special counsel for the State): I object to that.

"By the Court: Objection overruled.

"By the Witness (answering): Nothing only as a friend of the girl.

"By Mr. Clymer:

"Q. Is that the only way? A. That's all.

"Q. Are you putting up any money to assist in the prosecution of this case? A. Not a cent.

"By Mr. Lay: I object to that, if the court please, and ask that it be stricken from the record.

"By the Court: Objection sustained, and that is stricken from the record and the jury instructed not to consider it in making up their verdict. (Exception to ruling, etc.)

"By Mr. Clymer:

"Q. I will ask you to state whether or not you have employed any counsel to assist the prosecuting attorney in the prosecution of this case?

"By Mr. Lay: I object to that question.

"By the Court: Sustained. (Exception to ruling, etc.)"

The defendant's counsel was entitled to inquire of this witness whether or not he employed special counsel for the State, and whether or not he otherwise contributed any money to the prosecution of the case, in order to show his interest, if any, in the result of the trial, and the trial court erred in ruling to the contrary. However, the witness said he contributed "not a cent" to the prosecution of the case, and, although this testimony was excluded, it is manifest that the defendant was not harmed by the error of the trial court in this particular. Moreover, the record shows that the defendant's counsel was permitted to cross-examine this witness, at great length, concerning his relations with the Miller family, particularly the prosecutrix, and concerning his activities in connection with the prosecution of the case.

III. The defendant finally contends that there is no substantial evidence to support the verdict. It is apparent at once that there is no merit in this contention. The prosecutrix, who died prior to the trial, testified positively, at the preliminary hearing, that, on July 4, 1928, the defendant had sexual intercourse with her in an upstairs room of her grandmother's home in Crawford County, and again,

in the same room, on July 5, 1928; that she became pregnant as the result thereof; and that she had never had sexual intercourse with any one else. It is undisputed that she was between fourteen and .fifteen years of age in July, 1928; that the defendant was visiting in her grandmother's home on July 4th and 5th, 1928; that she complained of the defendant's mistreatment of her to Mr. Harry Delashmitt about October 1, 1928; and that, on October 11, 1928, she was examined by Dr. Royse and found to be pregnant. The story of the prosecutrix is further corroborated by the testimony of her cousin, Ida Dowler, who said that, on July 4, 1928, the prosecutrix and the defendant were alone, awhile, in an upstairs room of her grandmother's home; and her story is further corroborated by the letters and the vulgar and obscene card received by her from the defendant, which tend to show that, at the time in question, she was influenced by unnatural attentions and immoral suggestions on the part of the defendant. And, according to the testimony of Mrs. Howard and Mrs. Wade, the defendant admitted his guilt of the offense charged, a few days before the preliminary hearing. The testimony of the defendant's witnesses merely presented issues for the determination of the jury. It is the province of the jury to pass upon the weight of the evidence and the credibility of the witnesses, and the evidence is amply sufficient to support their verdict. [See State v. Thomas, 318 Mo. 843, 1 S. W. (2d) 157; State v. Hutchens, 271 S. W. 525, and cases cited therein.]

We find no prejudicial error in the record proper, nor in any of the trial proceedings complained of. The judgment is accordingly affirmed. All concur.