**STATE of Missouri, Respondent,**

v.

**Harry MENTOR, Appellant.**

No. 53757.

Supreme Court of Missouri,

Division No. 2.

Nov. 12, 1968.

Norman H. Anderson, Atty. Gen., Jefferson City, W. Scott Pollard, Sp. Asst. Atty. Gen., St. Louis, for respondent.

J. Arnot Hill, The Legal Aid and Defender Society of Greater Kansas City, Kansas City, for appellant.

FINCH, Presiding Judge.

Defendant appeals from a judgment and sentence of twenty years' imprisonment imposed by the trial court upon conviction of defendant by the jury of a charge of robbery in the first degree. Defendant was charged under the Second Offender Act, § 556.280, RSMo 1959, V.A.M.S., and the trial court imposed sentence after making the required findings with reference to a prior conviction.

A single question is presented on this appeal. Defendant asserts that it was error to permit an in-court identification of him by the victim of the robbery, Gloria White, for the reason that the identification allegedly resulted from a lineup claimed by the defendant to be violative of his Sixth Amendment rights as declared in the cases of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, and Gilbert v. State of California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178.

Gloria White managed for her mother an apartment building located at 2823 Forest in Kansas City. On the morning of August 19, 1967, she went to the apartment to put a padlock on a tenant's door because two tenants had been severely beaten earlier that morning. As she was leaving the apartment building, she saw a man walking north on Forest. As she walked toward the sidewalk along Forest Street, this man, later identified by Mrs. White as the defendant, slowed his pace. Mrs. White entered her car and continued to observe the defendant. Defendant walked so slowly that she finally started her car and pulled out from the curb, continuing to watch defendant in the automobile side view mirror. She observed that defendant walked by the steps to the apartment and then turned around and went back and into the apartment. Mrs. White then parked her car and returned to the front of the apartment. She told her mother, who was in the side yard, to go to a side door which led to the second floor and then downstairs to the lobby, and Mrs. White then entered at the front door.

Mrs. White found the defendant in the front lobby and asked him if she could help him. He replied that he was looking for Clarence. She told him that there was no one in the apartment by the name of Clarence. The defendant still insisted he was looking for Clarence. They had additional conversation, some of which Mrs. White related. She estimated that this occurred during a period of perhaps ten minutes. Mrs. White then told the defendant to excuse her as she was going upstairs. As she started, the defendant grabbed her by the throat and threw her on a sofa and started to choke her. She kicked and screamed and her mother, who was upstairs, came down and yelled at the defendant to stop and attempted to pull the defendant off of Mrs. White. As a result, he got up and released Mrs. White but grabbed her wristwatch and ran out the front door and up Forest Street.

On September 7, 1967, the defendant was arrested in connection with another offense which was committed in this same area. Mrs. White and her mother were called down to the police station where they observed the defendant in a lineup. Defendant was identified as the man who had robbed Mrs. White. Some two or three weeks later, a charge against him in this case was filed, and he was subsequently tried and convicted thereon.

Prior to the presentation of any evidence to the jury herein, the trial court, at the request of counsel for defendant, conducted a hearing out of the presence of the jury. In requesting that hearing and in stating the reason therefor, counsel for defendant said: "More specifically, the purpose of the hearing is for the court to finally determine whether or not the courtroom identification is a result of the illegal lineup or whether the illegal lineup was mere harmless error procedure as regards the identification." Mrs. White testified at some length at that hearing, as did Officer Earl Horner, who conducted the lineup.

It appeared from the testimony that no attorney for the defendant was present at this lineup, which, of course, occurred after the date of the Wade and Gilbert decisions.

At the conclusion of the hearing, counsel for defendant moved that the court hold that the lineup at which no attorney was present was illegal and that it, rather than an independent recollection of the man who robbed her, was the source of any identification which Mrs. White might make in the courtroom. This motion was denied by the trial court on the basis that the Wade and Gilbert cases were not applicable to the situation there presented. The court pointed out that Gilbert and Wade dealt with post-indictment, pre-trial situations after the defendants had counsel, whereas here this defendant was not arrested in connection with this offense nor charged therewith until later in the month of September.

On appeal the State points out that the defendant had been arrested in connection with another crime in the same area, that the police department was still investigating the robbery of Mrs. White, that defendant had not been arrested in connection with the latter offense, and that it was two weeks or so later when defendant was charged in connection with the robbery of Mrs. White. The State takes the position that, under those circumstances, Wade and Gilbert do not apply.

It is true that both in Wade and Gilbert the court specifically holds that the post-indictment, pre-trial lineup was a critical stage of the prosecution and that defendant's counsel should have been notified and his presence should have been a prerequisite to conduct of the lineup, absent an intelligent waiver. So far as we can ascertain, the Supreme Court has not ruled as to whether the requirements held to be applicable in the situations present in Wade and Gilbert would be applicable to a lineup such as the one here occurring during the investigatory phase of the case. Actually, whether the court would so hold is of little consequence in the situation here presented because even if the doctrine of Wade and Gilbert is applicable, that would make no difference in the disposition of this case. Here, the trial court did in fact conduct a hearing out of the presence of the jury specifically relating to the lineup and whether Mrs. White's in-court identification had an independent source or whether it was based on her observation of the defendant in the lineup. That was the specific issue raised by counsel for the defendant, which resulted in the hearing out of the presence of the jury.

The trial court did not make a specific finding that Mrs. White's identification had an independent source because he concluded that Wade and Gilbert were inapplicable, but the fact remains that he took the evidence on the question and it is preserved in the transcript on appeal.

In Wade the Supreme Court was reviewing a conviction in the District Court and it vacated the conviction pending a hearing in the District Court to determine whether the in-court identifications were the result of the lineup or whether they had an independent source and whether, in any event, the introduction of the evidence was harmless. Depending on the outcome of that hearing, the District Court was directed to reinstate the conviction or order a new trial. In directing this disposition of the case, the court said, 388 U.C. 218, 1. c. 242, 87 S.Ct. 1926, 1. c. 1940: "On the record now before us we cannot make the determination whether the in-court identifications had an independent origin. This was not an issue at trial, although there is some evidence relevant to a determination." This statement of the court indicates that if that question had been an issue in the lower court, and if the testimony had been taken and preserved for review by the Supreme Court, it would have determined the question itself. In the absence of such evidence, it remanded the case for further hearing.

In our judgment, it would serve no useful purpose for us to remand this case for a hearing on this issue by the trial court because such a hearing has been held and the testimony preserved. Under those circumstances, we review that evidence ourselves to determine whether the in-court identification by Mrs. White had an independent source or whether, from the evidence, it appears that it was based on the lineup of September 7.

Mrs. White testified that she observed this defendant as she was leaving the apartment and he was walking along the street in front of the apartment. As she was approaching the street, the man slowed down, which further directed her attention to him. She had been to the apartment as a result of someone entering one of the apartments earlier and beating two tenants.

When Mrs. White got in her car, she noted that the defendant had slowed to a very slow pace in front of the apartment. As a result, when she started her car and

drove up the street, she continued to keep this defendant under surveillance in her side view mirror. After she noticed that he turned around and went into the apartment, she parked and returned.

When Mrs. White went into the apartment, she went in for the express purpose of checking on this man whom she identified as the defendant. His suspicious conduct had attracted her attention. When she entered the lobby, the man was there and she conversed with him for a period which she estimated to have been ten minutes. During that time, they were the only two persons in the lobby and she was conducting a conversation with him. Then, as she started to leave the lobby, he grabbed her and choked her and fled when Mrs. White and her mother fought him off.

Mrs. White also testified that this same man had been run out of the building by her about three years before and that he had pulled a gun on her at that time.

When the police came to the apartment after the robbery, Mrs. White gave a description of the robber to the police. She described him as being a dark skinned Negro, about thirty years of age, approximately 5'9" in height and heavy. She told the police that he had a rough skin, that he had large eyes and the whites of his eyes were yellowish, that he had a broad nose, and that he had a tooth missing in his lower jaw or there was a wide space between his teeth. Mrs. White had worked for a dentist when she was in high school and she said that it appeared to her that the tooth missing was the first cuspid on the left side of the lower jaw, although it could have been merely an open space between his teeth.

With reference to the lineup, Mrs. White testified that on the day of the lineup, or possibly the day before, some officer had brought her a number of photographs to look at. She had looked at them and identified one as being the picture of the man who had robbed her. She testified that the officer had not made any suggestion about any picture but simply told her he had brought her some more pictures to look at.

In the lineup there were three colored men, all about thirty years of age. Her mother went with her but they did not discuss among themselves or with anyone else whether or not one of the men in the lineup was the man who had robbed her. Mrs. White testified that the one in the center was the defendant and that she immediately recognized him as the holdup man. He was dark skinned, had a broad nose, large eyes, the whites of his eyes were yellow, he had a missing front tooth, and his height was a little under 5'9". She did not know his exact weight but he was on the heavy side. That, of course, was the description she had given the police just after she had been robbed, and the defendant conformed to that description.

On the basis of this evidence, we have no doubt that the in-court identification of the defendant by Mrs. White had an independent basis and did not result from her observation of the defendant in the lineup. Actually, Mrs. White had considerable opportunity to observe this defendant. In the first place, she identified him as the man whom she had run out of the apartment about three years before, when he had pulled a gun on her. She was suspicious of him and observed him for some time on the street. Then, when he went inside, she was in the same room with him for approximately ten minutes and conversed with him during that period of time. This all gave her ample opportunity to observe the defendant and to be able to describe him and to recognize him on sight. When the police came afterwards, she gave them a detailed description of the man. She also described the clothes he was wearing at that time. Mrs. White testified that when she saw him in the lineup, she recognized him immediately as the person who had robbed her, and that she did so before any of the people in the lineup were requested to say anything at all. In Wade, 388

820 ∎

U.S., l. c. 240, 87 S.Ct., l. c. 1939, the Supreme Court recognized that when a lineup has been conducted without counsel being present, the Government should have an "opportunity to establish by clear and convincing evidence that the in-court identifications were based upon observation of the suspect other than the lineup identification." In the consideration of such question, the Court said, l.c. 241, 87 S.Ct. l.c. 1940, that these factors should be considered: " * * * the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification. It is also relevant to consider those facts which, despite the absence of counsel, are disclosed concerning the conduct of the lineup." Considering the evidence presented, and these factors which the Supreme Court said should be considered, we have no doubt that Mrs. White's in-court identification had an independent source. The evidence is clear and convincing. The admission of her testimony identifying defendant was not error.

At the trial, some reference to the lineup was made in the testimony, but counsel for the defendant objected thereto and requested the trial court to strike the testimony and instruct the jury to disregard it. The trial court sustained the objection and instructed the jury to disregard that testimony. No further request was made and the court was not asked to grant a mistrial. We have examined the argument of counsel to the jury and there was no reference therein to the lineup. We find no prejudicial error.

We find no error in those record entries which we examine pursuant to S.Ct.Rule 28.02, V.A.M.R.

Judgment affirmed.

All of the Judges concur.