**STATE of Missouri, Respondent,**

v.

**Johnny Lee SMITH, Appellant.**

No. 56582.

Supreme Court of Missouri,
Division No. 1.

March 13, 1972.

John C. Danforth, Atty. Gen., Gene E. Voigts, First Asst. Atty. Gen., Jefferson City, for respondent.

Gary E. Haggerty, Legal Aid and Defender Society of Greater Kansas City, Kansas City, for appellant; Paul T. Miller, Executive Director, Willard B. Bunch, Chief Defender, Kansas City, of counsel.

HIGGINS, Commissioner.

Johnny Lee Smith was convicted by a jury of robbery, first degree, by means of a dangerous and deadly weapon. The jury failed to agree on punishment, and the court assessed punishment at 15 years' imprisonment. Sentence and judgment were rendered accordingly. § 560.135, V.A.M.S.; Criminal Rule 27.03, V.A.M.R.

On March 17, 1970, two brothers, Virgil Emery Lawrence and Johnnie Lawrence, were employed as attendants at Clark Service Station, 723 Southwest Boulevard, Kansas City, Jackson County, Missouri. At 3:50 a. m., a Negro, later identified as Johnny Lee Smith, drove a 1962 white Chevrolet station wagon into the station, ordered a dollar's worth of gasoline, and proceeded to the washroom inside the station building. The attendant, Johnnie Lawrence, was unable to execute the order because the automobile's gasoline tank was locked. When Smith emerged from the restroom, the attendant advised him he was unable to unlock the gasoline tank. They walked to the vehicle, Smith drew a gun, and marched the attendant into the station building where Virgil Lawrence was figuring a report. Smith demanded money from both attendants and received, pursuant to his armed demand, some cash, consisting of tens, fives, and ones. Smith then ordered the attendants into the washroom and directed them to remain there until after he left. After the attendants heard the automobile leave, they emerged from the washroom and noticed that a shotgun belonging to Johnnie Lawrence was also missing.

The attendants called the police at about 4:00 a. m., reported the robbery, and gave a description of the robber and the automobile.

A police officer came to the station and the attendants described the robber as a Negro; approximately 5' 10" tall; 160 to 170 pounds in weight; horseshoe scar over the left eye; wearing white topcoat, yellow T-shirt or sweater, gray trousers, and brown shoes.

Officer Thomas Walter was on patrol and received the broadcast of the robbery and descriptions of the automobile and its operator. He took a surveillance position at Sixth and Broadway and, within a short time, observed a vehicle matching the given description. He also noted that the door covering the gasoline filler cap was standing open. The officer continued his surveillance by following the vehicle on a circuitous route through downtown Kansas City. When assistance was in place, he put his siren and red light in operation, after which the vehicle accelerated and a high speed chase followed. During the chase the officer identified Johnnie Lee Smith as the operator of the vehicle. Ultimately the vehicle was crashed into a police barricade and Smith fled on foot. He was subsequently arrested in the basement of a nearby house owned by Michael O'Toole. Mr. O'Toole gave permission to the police for a search of his basement, and $63.80, consisting of four tens, two fives, and miscellaneous change, was retrieved from the ledge in the basement. Obtained from the pursued vehicle, a white station wagon, was the revolver used

in the holdup and the shotgun belonging to Johnnie Lawrence.

Arrangements were made to place Smith in a line-up. He would not sign the police department's form for waiver of presence of counsel and request to be shown in a line-up; but he stated he was willing to be shown in a line-up and that he did not want an attorney for his line-up. Two separate line-ups were arranged. The first was viewed by Virgil Lawrence who then returned to the service station to relieve his brother. There was no discussion about the line-up between the brothers. Johnnie Lawrence then viewed the second line-up. In both line-ups Smith, age 23, 5′ 11″, 175 pounds, wearing a yellow sweater and gray-gold trousers, was shown with two other Negroes. One was 5′ 9″, 160 pounds, age 20, and wearing blue Windbreaker, yellow shirt, and tan trousers; the other was 6′ 1″, 180 pounds, age 18, and wearing a black coat, blue shirt, and tan trousers. Both brothers identified Johnny Lee Smith at the line-ups as their assailant. They also identified Johnny Lee Smith as the robber at trial, based upon their opportunity to observe him during the course of the robbery as well as on their line-up identification.

Appellant tacitly concedes, as he must, the sufficiency of evidence to support his conviction.

Citing United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, appellant contends the court erred in overruling his pretrial motion to suppress the line-up and in-court identifications of defendant, "in that said testimony was tainted by unconstitutionally suggestive identification procedures." In support of his contention he asserts he was not advised that he was being placed in a line-up. Nor was his permission requested; nor was he asked to sign a written waiver with respect to his rights. He also argues that only two other people were placed in the line-ups with him; that

they ranged in age from three to five years younger; and that only defendant wore clothing matching the description of the robber's clothing. He concludes that he was exhibited in a tainted line-up so fundamentally unfair and suggestive as to render the identification impermissible.

■ Since the trial court did not state whether the in-court identifications had an independent source or whether they were based upon the line-up alone, the question is whether the circumstances of the line-up were unduly suggestive. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199.

Important in resolution of the question is the opportunity of the identification witnesses to observe their assailant at the scene of the crime. State v. Mentor, Mo., 433 S.W.2d 816. This record is clear in showing that both Virgil and Johnnie Lawrence had opportunity to observe the robber over a period of several minutes on the service station driveway and in the station building. State v. DeLuca, Mo., 448 S.W.2d 869.

Of similar import is the accurate, detailed description of the robber and his automobile that the Lawrence brothers gave to the police.

Nor can it be said that the pretrial identification procedure itself was suggestive. The witnesses, Virgil and Johnnie Lawrence, viewed separate line-ups and did not check notes between the views, and the officers conducting the line-ups made no suggestions to either witness. The line-ups were not one-on-one confrontation, but were three-man showings. The two men shown in both line-ups were Negroes and were similar in physical characteristics and appearance and dress. There is no showing that the age differential was significant.

With respect to the asserted failure of the police to advise of the right to counsel, the evidence was in conflict and the court resolved the issue against defend-

ant. In opposition to defendant's assertion was the testimony of Officer Luther that defendant was advised of his rights and then stated he did not want an attorney and consented to be placed in a line-up. It is true that defendant did not sign the written prepared form acknowledgment of rights and consent to be shown; however, such was not preclusive because the oral testimony was substantial evidence that defendant had been advised of his rights. State v. Auger, Mo., 434 S.W.2d 1, 6[9]. The officer's testimony also shows defendant's consent to be shown, but, in any event, the authorities have not deemed consent necessary to a valid line-up procedure. United States v. Wade, supra; Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908.

■ Appellant's assertion that his first line-up was conducted when appellant refused to waive his rights, and that the second was conducted without advice as to his rights, is not supported by the record. To the contrary, the record shows that the refusal to sign the written waiver, advice of rights, waiver of counsel, and consent to line-up occurred prior to both line-ups.

In this posture, the case is clear that defendant was advised of his rights prior to line-up; that he waived them and consented to participate; and that the line-up itself was not unduly suggestive.

Appellant contends next that the court erred in admitting Exhibit 9, the written report of Detective Wilson, "in that the report contained hearsay, contained evidence of other crimes and was immaterial, irrelevant and prejudicial to defendant."

Appellant's contention goes to that portion of the officer's report containing comments of Michael O'Toole which already had been ruled hearsay. He argues that by admission of Exhibit 9, the court circumvented its own ruling.

■ The police report and, in particular, its comments of Michael O'Toole, was hearsay and subject to exclusion, State v. Kaplan, Mo., 16 S.W.2d 35, 37; however, the context surrounding Exhibit 9 shows that error, if any, in its admission was harmless.

Prior to the first reference to Exhibit 9, Detective Wilson detailed his pursuit of defendant to the basement of Michael O'Toole's home. "I asked Mr. O'Toole * * * if anyone was supposed to be down there, and he stated no * * *. I opened the door and went down to the basement, and in the search of the basement I found money approximately three feet west of this window which had been opened, on the basement ledge. This was change and bills, just had been thrown up on the ledge. Q Do you recall the amount? A Sixty some dollars, but I don't recall the exact amount. Q * * * And do you recall the denominations of the bills? A There were four ten dollar bills and that's the only thing— Q Were there any five dollar bills * * *? A I don't recall. Q Did you make a report of this? A Yes, sir, I did. Q Would it aid you in refreshing your recollection to look at that report? A Yes, sir. I could tell you the exact amount. * * * Q I'll hand you what has been marked as Exhibit 9. A States in the report that I found sixty-three dollars and eighty cents * * *. Q And does it give the denomination of the bills? A Yes, sir. There was four ten dollar bills, five one dollar bills, four five dollar bills and the rest was in miscellaneous change. * * * Q Did you ask the owner of the house if that was his money? A Yes, sir, I did. He stated— MR. HAGGERTY: Your Honor, I object to anything Mr. O'Toole stated as being hearsay. THE COURT: Objection sustained. Q Has Mr. O'Toole ever made a claim to this money? A No, sir. MR. PEAK: At this time I offer State's Exhibit 9. MR. HAGGERTY: Your Honor, I object— MR. PEAK: Well, I will withdraw the offer then."

The next reference to Exhibit 9 came just before the State rested. "MR.

PEAK: * * * I will offer at this time, State's Exhibit 9. I thought it had been offered. MR. HAGGERTY: As I recall, * * * I objected to it and it was withdrawn. I renew the same objection I had before. THE COURT: That's the statement— MR. PEAK: Of Detective Wilson he used to refresh his recollection. THE COURT: The objection will be overruled and State is authorized to pass Exhibit 9 to the jury."

The only reference in the statement to Michael O'Toole was that "he stated he didn't know the suspect and he had given no one permission to stay in his basement. Mr. O'Toole gave the reporting officer the okay to check his basement, where the suspect was arrested and we found sixty-three eighty in U. S. currency in south window of the basement." This is simply the same as the testimony previously quoted from Detective Wilson and received in evidence without objection. Such was competent and undisputed with respect to whether defendant had permission to be in O'Toole's basement, that a sum of money was found at the place of defendant's arrest, and that Mr. O'Toole made no claim to it. Therefore, the admission of the same evidence by way of Exhibit 9, although technically improper, could not have been prejudicial to defendant. State v. McDaniel, Mo., 327 Mo. 269, 37 S.W.2d 441, 443[1]; State v. Johnson, Mo., 252 S.W. 623, 625 [7].

Appellant makes a similar complaint with respect to admission of State's Exhibit 5, contending it was "repetitious, immaterial, and hearsay." See State v. Gorden, Mo., 356 Mo. 1010, 204 S.W.2d 713, 715; State v. Summers, Mo., 362 S.W.2d 537, 542; State v. Parker, Mo., 403 S.W.2d 623, 625.

Again the context needs to be shown to demonstrate that error, if any, was harmless. Exhibit 5 was a written statement taken by police from Virgil Lawrence, in which he recited the circumstances of the robbery, description of robber and vehicle, his identification of the robber in the line-up. At trial Virgil Lawrence was cross-examined not only on his direct examination but was also examined with respect to whether he had made a written report, the circumstances surrounding its making, whether he reviewed it prior to testifying, and whether the description he gave on direct examination was based on the report or upon his recollection. On redirect examination, the statement was identified by Virgil Lawrence and then offered by the State. Defendant objected to admission of the exhibit "as being repetitious and unnecessary. He already testified to everything in here." In overruling the objection and admitting the exhibit, the court observed that the defendant "opened up the matter."

In any event, the exhibit was relevant because it contained the description of the robber, United States v. Fabio, 394 F. 2d 132, 133[2]; and, as asserted by appellant, it was repetitious and cumulative to other competent evidence. Therefore, as with Exhibit 9, admission of Exhibit 5 was technically improper, but could not have been prejudicial. State v. McDaniel, supra; State v. Johnson, supra. See also State v. Williams, Mo., 448 S.W.2d 865, 869[8].

Appellant's final complaints go to State's Exhibits 1, 2, and 3. He charges the court erred in permitting those exhibits, "introduced during the pretrial motion to suppress the identification, and which were never re-offered as evidence during trial, in that the introduction of these exhibits violated defendant's constitutional rights." He asserts he stipulated to admission of the exhibits "during the hearing" and that their admission was limited to that purpose. He contends further with respect to Exhibit 1 that it "contained hearsay comments, was irrelevant and immaterial and further contained comments attributable to defendant which were an invasion of his constitutional rights." Exhibit 1 is the line-up waiver form which defendant refused to sign; and appellant's complaint goes to the recital written on the form by Detective

Luther that defendant "refused to sign, but stated he would be willing to stand up in a lineup and did not want an attorney at this time." He would liken his position to the prejudicial error occasioned by admitting evidence that defendant failed to volunteer an exculpatory statement. State v. Stuart, Mo., 456 S.W.2d 19.

The difficulty with appellant's contentions is that the record shows that he obtained the admission of Exhibits 1, 2, and 3 at trial.

Exhibit 1 was the waiver form previously described; Exhibit 2 was the report of line-up viewed by Virgil Lawrence; and Exhibit 3 was the report of line-up viewed by Johnnie Lawrence. All three were admitted at the pretrial motion hearing. Exhibit 1 was admitted pursuant to stipulation "that it is acceptable for the purpose of indicating what the testimony of * * * Officer Luther would be" if present; and Exhibits 2 and 3 were admitted upon defendant's statement, "I have no objection." At trial, during defendant's cross-examination of Detective Luther, the following matters transpired with respect to Exhibits 1, 2, and 3. Exhibit 2 was offered to Detective Luther to have him read from it; and, upon objection by the State, counsel for defendant stated, "Very well, at this time introduce this as Defendant's Exhibit No. 1, Your Honor, previously been introduced as State's Exhibit 1 [2] on oral motion." Further on, the State offered, "As far as that goes, I will—if the Court likes, or if you like, I will offer all three of these exhibits on behalf of the State. MR. HAGGERTY: Well— THE COURT: They have been offered and admitted in evidence. MR. PEAK: But I will now offer them before the jury. * * * MR. HAGGERTY: Of course, I had offered them as Defendant's Exhibits, Your Honor, * * *."

 In this context, it is clear that Exhibit 2, the report of line-up viewed by Virgil Lawrence, came before the jury pursuant to defendant's offer. Perhaps the record is not as clear as to defendant's offer of Exhibit 3, but it is of the same substance as No. 2 except it reports the line-up viewed by Johnnie Lawrence. The record is also not as clear with respect to defendant's offer of Exhibit 1; but, in any event, it was not inadmissible for the reason urged by appellant. The recited refusal to sign the line-up waiver form is not evidence that appellant failed to volunteer an exculpatory statement in accusatory circumstances as in State v. Stuart, supra. Rather, it is simply corroborative of oral testimony of his consent to be shown in a line-up without presence of counsel.

Judgment affirmed.

WELBORN, C., concurs.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

HOLMAN, P. J., SEILER, J., and SMITH, Special Judge, concur.

BARDGETT, J., not sitting.