STATE of Missouri, Respondent,

v.

Alphonso HUDSON, Appellant.

No. 56577.

Supreme Court of Missouri, Division No. 1.

March 13, 1972.

Motion for Rehearing or to Transfer to Court En Banc Denied April 10, 1972.

———◆———

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, for respondent.

Daniel P. Reardon, Jr., St. Louis, for appellant.

SEILER, Judge.

Defendant appeals from his conviction by a jury of first degree robbery with a sentence of 25 years by the court under the second offenders act.

The sole question is whether it was error to put before the jury in the state's opening statement and by testimony from the complaining witness that defendant had robbed him on two prior occasions.

In the opening statement, the assistant circuit attorney said: " . . . on the 24th of July last year, 1970, one Daniel O'Connell was an employee of the Chapman Ice Cream Company . . . At about 2:37 on that date when he was at . . . 1425 Vandeventer . . . he was accosted by the defendant Alphonso Hudson who pulled a small revolver and announced to him that this was a 'hold-up', to give him his money . . . [H]e took from the man the sixteen dollars and he did this at gunpoint . . . It is important to tell you when Mr. Hudson robbed O'Connell, Mr. O'Connell recognized him, not only by sight, but by name because the man had held him up on two occasions in the past." [1]

Upon resuming his opening statement, the assistant circuit attorney repeated: " . . . Let me reiterate briefly, at the time Mr. O'Connell was held up he recognized the man held him up because he had been robbed by the man on two previous occasions. He knew him by name as well as by sight . . . "

Mr. O'Connell was the state's first witness. On direct examination, he testified:

"Q As you were leaving the garage on that day, the 24th of July, did something unusual occur?

" . . .

"A I was walking through the garage going home and I see somebody walking through, and I recognized who it was, and he pulls out a gun on me and held me up.

"Q Did you see—can you give any kind of description of the gun?

"A I seen the man's face and then I really couldn't tell you exactly what type of gun it was.

" . . .

"Q You say you recognized him at the time? A Yes.

"Q Under what circumstances, without going into great detail?

"A I seen him twice previously and I seen him one other time on a police line-up before.

"Q You said you saw him twice previous? A Yes

"Q May I take these apart. Do you recall the approximate date of the first time you saw him? A January 12, 1970.

"Q And approximately where were you? A I was at Vandeventer and Kennerly Avenue.

"Q What happened there? A I got robbed there.

"Q By whom? A The same man.

"A When did you next see him? A January 13.

" . . .

"Q Where did you see him?

"A I seen him in the alley of Chapman Ice Cream Dairy right there.

"Q What did he do at that time? A Held me up again."

The other witnesses for the state were the arresting officers. Defendant did not take the stand and put on no evidence.

On the record before us, it was reversible error to refer to and put into evidence the two prior crimes. State v. Carter (Mo. Sup.) 475 S.W.2d 85; State v. Reese, banc, 364 Mo. 1221, 274 S.W.2d 304, 307; State v. Reed (Mo.Sup.) 447 S.W.2d 533, 534.

The judgment is reversed and the cause remanded.

All of the Judges concur.

1. At this point, counsel for the defendant objected, there was argument outside the hearing of the jury and the objection was overruled, with the understanding it would not be necessary for counsel to make further objections.