**STATE of Missouri, Respondent,**

**v.**

**Albert Junior MITCHELL, Appellant.**

**No. 56908.**

Supreme Court of Missouri,
Court en Banc.

March 12, 1973.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, for respondent.

R. Howard Dillard, Everett S. Van Matre, Mexico, for appellant.

HIGGINS, Commissioner.

Albert Junior Mitchell, charged with forcible rape, was convicted by a jury which assessed his punishment at 75 years' imprisonment. Sentence and judgment were rendered accordingly. § 559.260, V.A.M.S. (Appeal taken prior to January 1, 1972.)

Appellant's statement presents his points on appeal and demonstrates the sufficiency of evidence to sustain his conviction as well:

"On the 3rd day of June, 1970, Lorene Simms, * * * 69 years of age, lived at 507 Central, Mexico, Missouri * * *. In late afternoon of that day a young colored man knocked at her apartment front door. He asked to use the phone to call a taxi. He told Mrs. Simms that he had just returned from Vietnam. She dialed the number for him. The man was dressed in a khaki outfit, the same as the defendant was wearing at trial. After talking to the cab company the man left Mrs. Simms' apartment. The time was about 4:20 or 4:25 p. m. The same man returned about 4:30 p. m. He asked to use the phone again to call a number he gave Mrs. Simms, which she dialed for him. The number was apparently out of order but instead of leaving he just sat and watched television * * *. Mrs. Simms tried the number again and got a busy signal. At this point the man made some vulgar remarks to Mrs. Simms then came over and started choking her. Mrs. Simms pushed him away and ran toward the front door but was caught and struck by the man and her glasses were knocked off. She fainted and came to in the kitchen where she was lying on the floor and the man was tearing off her underclothes. There was penetration of her sexual organ by the sexual organ of the man. Mrs. Simms was trying to push the man away. The man got up when he had finished, and wiped himself off with Mrs. Simms' panties. Earlier the man had told Mrs. Simms that his name was Eddie Williams. She knew a Williams lived nearby. This man took Mrs. Simms' scissors, concealed them under his sleeve, and told Mrs. Simms not to make any noise or look around or he would stick her with them. They left Mrs. Simms' apartment and walked past two other housing units adjacent to Mrs. Simms' home and entered the third unit. * * * There she saw Walter Williams lying in the living room and some whiskey bottles on the floor. The

man asked, 'Can I use your bed, I brought you something.' Then Mrs. Simms' was forced down on the bed in the bedroom and 'raped again.' Mrs. Simms wanted to leave and get some heart medicine. After some discussion the man agreed but said that if she wasn't back in five minutes that he would kill her. Mrs. Simms went home and called a neighbor, Alvin Bell. The Bells came over and the police were called. Two officers came, one into Mrs. Simms' apartment and the other outside. She told the police what happened. Later she stepped outside and Sergeant Griffin, one of the police officers, pointed out the defendant who was in the custody of Lieutenant Park in front of Walter Williams' home and said: 'We have the man in custody, there he is now.' She identified the defendant in court as the man who had attacked her. Mrs. Simms was taken from her home to the hospital where she was examined by Dr. Garcia. He found her to be highly nervous and excitable, with a contusion of the left cheek and eye and swelling of the throat, and abrasions of the vaginal inlet. An examination of a vaginal specimen revealed sperm in the vagina.

"Defendant was arrested by Lieutenant Park at the Williams' home. When the police arrived he was asleep in a chair between the living room and the hall. He was wearing khaki clothing and his trousers were undone. Walter Williams testified that the defendant and Mrs. Simms had come from her house earlier that evening, that 'Albert Mitchell brought her down there.'

"The defendant's clothes were submitted * * * for examination. Positive reaction for seminal fluids was found on the underwear shorts. Also, positive seminal fluid reaction was obtained on Mrs. Simms' panties and dried blood on her dress.

"Sheriff Harold Sulgrove, of Audrain County, * * * testified that the khaki clothes the defendant wore in court were the same clothes that he had been wearing ever since shortly after his arrest. Sheriff

Orville Price, of Randolph County, who had had the defendant in his custody for several months prior to trial, testified that the Audrain County Sheriff had brought the clothes Mitchell wore in court to the Randolph County Jail the Saturday preceding the trial, which commenced Monday, March 29, 1971.

"Sheriff Price also testified, over objection, that he overheard the defendant making statements to some other prisoners as follows: 'From an old woman how good it was, that his cousin was just as guilty as he was, and that they were both half drunk when it happened.' The Sheriff had not reported the conversation which took place in January, 1971, to the Prosecuting Attorney until the night before he testified.

"In the opening argument to the jury the Prosecuting Attorney stated that the evidence had shown that the defendant raped Mrs. Simms at 507 East Central and then used these words: 'First he had ripped off her undergarments and then after he raped her he wiped himself off with her pants. Then he picked up a pair of scissors and forced her to go out the back door and that the defendant took Mrs. Simms down to a place a couple of doors down, 515, it is in the same area, we will have some pictures to show you, took her in there, there were persons in this other apartment, this is a project area in Mexico, and there on a bed raped her again.' The defendant objected to the statement of the Prosecuting Attorney and moved for a mistrial."

By points 1 and 2 appellant charges the court with error in refusing his motions for mistrial going to the State's opening statement and the evidence that defendant committed a second rape at a later time and at a different place than the rape on trial. His argument is that the statement and proffered evidence were inflammatory, illegally prejudicial, and constituted proof of separate and distinct crimes.

■ State v. Reese, 364 Mo. 1221, 274 S.W.2d 304, recognized the general rule that the proof of the commission of separate and distinct crimes is not admissible, unless such proof has some legitimate tendency to directly establish the defendant's guilt of the charge for which he is on trial. That case also recognized that evidence of other crimes is competent to prove the specific crime when it tends to establish motive, intent, absence of mistake or accident, common scheme or plan, or identity of the person charged with the commission of the crime on trial.

■ In this case defendant made a trial issue of his identity and, as will be seen by his next point, he makes also an appellate point of his identification. In such posture, the evidence of the second rape, closely following the rape for which he was on trial, would have been competent to show the opportunity for, and the identification of, defendant as the rapist.[1] As a consequence, defendant obtained trial favor to which he was not entitled when the court sustained his objections and instructed the jury to disregard references to the second rape.

By point 3, appellant complains of the refusal of the court to strike the in-court identification of defendant by the complaining witness. His argument is that the conduct of the police at the time of arrest was suggestive to the point of tainting the in-court identification. See United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149; Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199; Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178.

■ Appellant's argument and authorities are not applicable to this case.

1. By way of distinction, the reversible error in State v. Reese, 364 Mo. 1221, 274 S.W.2d 304, occurred in admitting the irrelevant evidence of an attempted armed robbery at a different location some two hours after the charged murder. Such, obviously, bore no relation to identity of the murderer.

Mrs. Simms identified her assailant a short time after commission of the assault, virtually at the scene of the assault, and as the arrest occurred. Prior to those incidents she had seen her assailant-to-be when he knocked on her door, in his conversation about his return from Vietnam, as he used the telephone twice, as he watched her television, at the time of the assault, and at its completion. In addition, she noted his appearance and his clothing. Such circumstances gave defendant's victim an independent source and basis for her identification of defendant both at the time of arrest and at trial; and any taint by suggestion, if so, was effectively overcome by such independent basis. State v. Mentor, Mo., 433 S.W.2d 816, 818–820; United States v. Wade, supra, 388 U.S. 1. c. 240, 87 S.Ct. 1926; State v. Balle, Mo., 442 S.W. 2d 35, 38–39 [1–3]; Grant v. State, Mo., 446 S.W.2d 620.

Appellant's point 4 goes to the testimony of Sheriff Price with respect to the inculpatory statements made by defendant while in jail and the clothing given defendant to wear at trial. He asserts: (a) admission of the statement without showing a "Miranda warning" was improper; (b) abuse of discretion in permitting the State to introduce the admission on cross-examination of the sheriff when he had testified directly only on the matter of where defendant's clothing was obtained; (c) tactics of the State in withholding the inculpatory statement until the sheriff was called as a defense witness on the clothing issue without prior warning that such testimony was available.

In argument, appellant admits "that no case directly in point can be found to bolster defendant's claim(s) on point 4."

In these circumstances, suffice to say:

With respect to (a), the statement was not a product of interrogation, but was a voluntary statement made by defendant to a fellow prisoner, overheard by and related by the sheriff. It was, therefore, not within the purview of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. Gregg v. State, Mo., 446 S.W. 2d 630, 632 [1, 2]; State v. Peck, Mo., 429 S.W.2d 247, 250–251 [6, 7].

With respect to (b), the trial court was invested with discretion in determining the extent of cross-examination, State v. Davenport, Mo., 360 S.W.2d 710, and no abuse of such discretion is shown since the matter in question arose from cross-examination of a general defense witness as opposed to defendant himself, State v. West, 349 Mo. 221, 161 S.W.2d 966, 967 [2–4].

With respect to (c), even though Sheriff Price did not report the statement to the prosecuting attorney until the night before defendant's trial, it was not necessary that defense counsel be informed of the pretrial existence of the statement by the State because defendant, himself, knew whether he had made the statement, and he does not now claim that he did not make such statement.

Judgment affirmed.

WELBORN, C., concurs.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the Court en Banc.

All concur except SEILER, J., who dissents in separate dissenting opinion filed.

SEILER, Judge (dissenting).

Where circumstances of a crime are likely to arouse hostility and passion, the court should exercise the utmost care with regard to the fairness of the trial. This was not done here, and, as a result, defendant

was effectively tried and punished for two rapes under the guise of being tried for one.

Defendant was charged with a rape occurring at 507 Central, Mexico, Missouri. However, in the opening statement, the prosecutor, after relating the details of the rape at 507 Central, then said: "Then he picked up a pair of scissors and forced her to go out the back door and that the defendant took Mrs. Simms down to a place a couple of doors down, 515, it is in the same area, we will have some pictures to show you, took her there, there were persons in this other apartment, this is a project area in Mexico, and there on a bed raped her again."

Defendant objected. The court ruled the prosecutor would be permitted to show defendant "was at the other place. Just minimize it, what took place there", overruled defendant's objection, and instructed the jury to "disregard any statement as to a subsequent offense."

During the direct examination of the prosecutrix, after she had related the details of the rape at 507 Central, she told about being forced to go to 515 Central and then, in an unresponsive answer to the question, "What was there in the living room? Was there a bed there?", she stated, after describing the living room at 515 Central and some of its contents, "And Mitchell said, Uncle Walter, can I use your bed, I brought you something. And Uncle Walter just mumbled, so I was forced down on the bed and raped again right there."

Again the court overruled defendant's objection and request for mistrial and instructed the jury to "disregard the last statement of the witness at this time."

The jury thus had before it two rapes of a 69 year old widow by a young negro, when he was supposed to be on trial for one rape. It is true the court instructed the jury to disregard the second rape, but as so accurately put in the oft quoted statement made by Mr. Justice Jackson in Krulewitch v. United States, 336 U.S. 440, 453, 69 S.Ct. 716, 723, 93 L.Ed. 790: " . . . The naive assumption that prejudicial effects can be overcome by instructions to the jury . . . all practicing lawyers known to be unmitigated fiction . . ." So it is here.

The sentence of 75 years for an uncomplicated rape of a mature widow with no particularly aggravating circumstances (except the second rape) demonstrates the inflammatory effect the second rape had on the jury.[1]

I do not agree there was a question of identity of defendant involved which would justify permitting evidence of the second rape as necessary to show opportunity on the part of the prosecutrix to identify him, nor did the trial court, which considered the reference to the second rape improper, as shown by its direction to the jury to disregard it. There never was the slightest question of identity in this case. When the prosecutor first made mention of the second rape in the opening statement, he sought to justify it not on the ground that it was necessary to establish identity, but on the ground that it was all one continuous act and therefore admissible. When the prosecutrix was asked by the prosecutor to identify defendant she did so without hesitation and without objection from defendant. On cross-examination prosecutrix was steadfast in her identification of defendant. There was no effort made to shake her identification and it was not shaken. The prosecutor asked one of the policemen whether the prosecu-

---

1. We were informed at oral argument that charges on the second rape are still pending against defendant.

trix was hesitant in her identification, and the answer was that "she was quick to identify him, yes."

During the state's opening statement, when the prosecutor was relating how the arresting officers took defendant back to where Mrs. Simms was, defendant's counsel objected this was contrary to the United States Supreme Court cases about suggestive confrontations. The court overruled the objection. This objection was repeated at the close of the state's case and again overruled. Counsel also objected to the police officer's recital of his telling Mrs. Simms that they believed they had the man and that "there he is now." This too was overruled.

These technical and hopeless objections by defense counsel to the conduct of the officers in the way they displayed defendant to Mrs. Simms after the arrest did not in any way justify the prosecutor or Mrs. Simms in bringing the second rape before the jury. The state's claim there was a trial issue of identity is no more than an afterthought or a straw man, in the knocking down of which the prejudicial evidence as to the second rape is held admissible.[2]

Under the authority cited in the majority opinion, State v. Reese, 364 Mo. 1221, 274 S.W.2d 304, 307, the second rape is inadmissible, because it holds ". . . If the identity of the accused is established by other evidence and is therefore no longer an issue, it is improper to admit evidence of other crimes on the theory of proving identity . . ." Application of this principle was recently made in State v. Hudson, (Mo.Sup.) 478 S.W.2d 281, where,

under the guise of getting it into evidence to show that the victim had other opportunities to observe the defendant who was being prosecuted for a first degree robbery occurring at 1425 Vandeventer, St. Louis, the state brought out from the victim that he had seen defendant on two other occasions, one at Vandeventer and Kennerly, where defendant robbed him, and again in an alley, where defendant also robbed him. The victim had already testified to the robbery at 1425 Vandeventer and that he recognized the man who held him up, and it was ruled reversible error to bring before the jury the other crimes.

In the case before us, there was no need or justification for the prosecutor or the prosecutrix to tell the jury about the second rape and we should not permit it. The state could easily have shown that Mrs. Simms was with defendant at another location for a period of time after the first rape without bringing out the second rape. Getting the second rape before the jury kept defendant from having a fair trial. It is true the record shows no doubt as to defendant's guilt. But we must insist on a fair trial even for those who are guilty. Otherwise we might as well forego judicial trials and leave guilt up to the police. I respectfully dissent and would reverse and remand.

If the case is not to be reversed and remanded, then I would be in favor of reducing the punishment to 25 years, under Rule 27.04, V.A.M.R., on the ground the punishment assessed is greater than, under the circumstances of the case, ought to be inflicted.

2. The state in its brief and the majority opinion, in upholding the in-court identification of defendant by prosecutrix, point out the many opportunities the prosecutrix had to notice defendant, his appearance, dress, size, voice, etc. prior to either rape, and that her positive identification of defendant took place at the scene, within a few minutes after the arrest. This supports the in-court identification, without question. It also shows there was never any real issue or dispute in this trial as to defendant's identity.