**STATE of Missouri, Respondent,**

v.

**Rawleigh TASH, Appellant.**

**No. 10114.**

Missouri Court of Appeals, Springfield District.

June 11, 1976.

Rehearing Denied June 28, 1976.

John C. Danforth, Atty. Gen., Robert M. Sommers, Asst. Atty. Gen., Jefferson City, for respondent.

Ralph E. Baird, Joplin, for appellant.

Before STONE, P. J., and HOGAN and TITUS, JJ.

TITUS, Judge.

Defendant was jury-convicted and sentenced to two years' imprisonment for stealing a bluetick coon dog, the property of Larry Wilson.

In 1972, and around June 20 or 21, defendant and his two sons, Arley and Byron, were in and near Horton, Missouri inquiring of several people about buying hunting dogs. Defendant and his two "grown boys" were traveling in a red Ford automobile bearing Kansas license plates. Chester Shields sold the trio a dog for $125 and Richard Pryor sold them a dog on a trial basis which they returned 4 or 5 days later. The three attempted to purchase a red hound from Pryor but he refused to sell this dog. Defendant and his sons also visited the Diehl and Larry Wilson farms ostensibly to view dogs and attempt purchases. All the persons called on by defendant and his boys lived in or within a few miles of Horton.

On July 3 Pryor, upon returning from Kansas City with his family, discovered his red hound missing. This was the dog he had refused to sell to defendant and his sons. On the same day Wilson found that his bluetick was gone. On July 5 Pryor, Wilson and the latter's father went to the Columbus, Kansas area looking for defend-

ant and the boys. Defendant's home was located but neither he nor the boys were there. Acting on information obtained while trying to locate defendant, Larry Wilson and his father traveled to Sesser, Illinois on July 8 to the home of William Art Loman, a dog dealer who bought and sold coonhounds and beagles. Loman had previously purchased dogs from defendant and his sons.

The night before Larry Wilson and his father arrived in Sesser, defendant and his two sons appeared at Loman's home in the red Ford accompanied by 4 dogs they wanted to sell to Loman. One of the four was Wilson's missing bluetick coon dog; another was Pryor's missing red hound. Defendant and the boys spent the night at Loman's house.

The next morning, when Wilson and his father arrived at Loman's house, the red Ford with Kansas tags was parked at the residence. Wilson and his father then found Chief of Police Bowers, who accompanied them back to Loman's house. The Ford was still there. Wilson's father knocked on the front door and Loman responded. When Loman went to answer the knock on the door, defendant and his two sons were inside the house. After learning the reason for the call, Loman took Wilson, his father and the police officer to the rear of his house. The dogs belonging to Wilson and Pryor were gone. After Wilson et alii departed, Loman reentered his house and found defendant and the sons were missing.

About an hour later Wilson and his father returned to the Loman home. They arrived at or near the time defendant's two sons were seen emerging from a nearby cornfield and were arrested. Wilson and his father followed shoe prints and dog tracks leading into the cornfield and later came upon Pryor's dog tied to a tree with bailing wire. Wilson's bluetick coon dog was found injured in a ditch; it had a large gash on its head and an injured eye. Wilson took his dog to a veterinarian and returned Pryor's dog to him in Missouri. When Wilson later returned to Sesser, Illi-

nois to get his dog, he learned that defendant had also been arrested and jailed.

In his appeal here, defendant raises some of the same points relied on by his son Arley who was separately tried and convicted of stealing the Wilson dog. That conviction was affirmed in an excellent opinion of the Kansas City District of this Court. *State v. Tash*, 528 S.W.2d 775 (Mo.App. 1975). Borrowing liberally from Judge Dixon's opinion, we gratefully acknowledge his good and helpful work with quotation marks.

Defendant's second point is rather prolix but, in substance, challenges the sufficiency of the evidence to sustain the conviction. The facts previously recited (which are almost identical to those in the reported case) "and the inferences favorable to the verdict, are sufficient to support the conviction of the defendant for the stealing of the Wilson dog." Ibid. 779[1].

Points 1 and 4 in defendant's brief complain that the trial court erred in denying defendant's application for a protective order against testimony regarding the theft of Pryor's dog and by admitting such evidence at trial over objection "on the grounds that it was evidence of another crime and inadmissible. There was evidence in this record that the Pryor and Wilson farms were close by. The evidence also demonstrated that the dogs disappeared from both households on the same day. The dogs were found together and had been in the recent possession of the Tashes. The State's contention is that this evidence is admissible under the common scheme or plan exception to the inadmissibility of such evidence in ordinary circumstances. Relying upon *State v. Smith*, 431 S.W.2d 74 (Mo.1968), and *State v. Mitchell*, 491 S.W.2d 292 (Mo. banc 1973), the State insists that the evidence in this case falls within the exception of common scheme or design. Examining all the facts and circumstances in this case and considering the entire record, it would seem that the State's contention is correct and that this case is one in which evidence of the theft of the other dog becomes admissible to show com-

**364**

mon scheme and design. The cases cited by the defendant, typified by *State v. Mathis*, 375 S.W.2d 196 (Mo.1964), can be distinguished by the absence of any facts in those cases which tended to connect or interrelate the offenses themselves rather than the defendant's connection with the offense. As noted above, there are a variety of facts here which tend to show a connection between the offenses and to demonstrate that the offenses were, in fact, part of a common scheme or design. The further elaboration of this point by defendant's assertion that the prosecutor improperly argued this evidence fails upon a finding that it was properly admitted in evidence." Ibid. 780[7, 8].

■ The final point for our consideration is defendant's point 3. It is: "The Court erred in giving Instructions 4 [MAI–CR 2.04], 5 [MAI–CR 3.06] and 6 [MAI–CR 2.10] over the objection of appellant for the reason that there is no evidence tending to show the appellant knowingly and with common purpose acted together with other persons with the common purpose of committing the offense alleged in the information, or that appellant knowingly and intentionally aided or encouraged another in committing it." We do not consider the point as it relates to instruction 5 for two reasons. First, instruction 5 was given at defendant's request. Second, the point, as it relates to instruction 5, is not preserved for appellate review because defendant's complaint thereof was not presented to the trial court in defendant's motion for a new trial. *State v. Grebe*, 512 S.W.2d 409, 410[1] (Mo.App.1974).

■ Instruction 4 "is a verdict directing instruction on stealing in [MAI–CR 2.04] form but requiring that the jury find that defendant acted in concert with others. On the first ground asserted, that there is no evidence of the defendant having acted in concert with others, the earlier recitation of the facts the jury could have found demonstrates the frivolity of the argument. There is again a sufficient circumstantial basis for the jury to infer the intent of the defendant to engage in a common scheme

or plan to steal the Wilson and Pryor dogs." *State v. Tash*, supra, 528 S.W.2d at 783[29].

"Instruction [6] . . . is a verbatim copy of MAI–CR 2.10 and was appropriate under the same analysis and authority as has been made as to instruction No. [4]." Ibid. 784.

The judgment is affirmed.

### Addendum

■ The transcript on appeal does not show that defendant asked for or received from the trial court additional time to file his motion for a new trial and that the motion was filed 13 days after verdict. Based on this, the State moved for dismissal of appeal. Criminal Rule 27.20(a), V.A.M.R. Albeit, according to the transcript, the motion was not timely filed, we could not dismiss the appeal because of our obligations under Criminal Rule 28.02, V.A.M.R. In any event, we have been provided with a certified copy of the trial court's docket which shows that defendant was given 20 days to file his motion for a new trial and that the motion was timely filed. Therefore, the State's motion is overruled.

All concur.