**STATE of Missouri, Respondent,**

v.

**Ross Odell CAREY, Appellant.**

**No. 56736.**

Supreme Court of Missouri, Division No. 1.

Nov. 13, 1972.

---

John C. Danforth, Atty. Gen., Peter H. Ruger, Asst. Atty. Gen., Jefferson City, for respondent.

Kenneth K. Simon, Kansas City, for appellant.

HIGGINS, Commissioner.

Ross Odell Carey was convicted by a jury of burglary, first degree. The jury was unable to agree on defendant's punishment; the court assessed his punishment at seven and one-half years' imprisonment and rendered sentence and judgment accordingly. §§ 560.040, 560.095, V.A.M.S.;

Rule 27.03, V.A.M.R. (Appeal taken prior to January 1, 1972.)

Appellant's statement of evidence demonstrates the sufficiency of evidence to sustain his conviction.

"Eula Mitchell testified that she occupied the premises in question [Route 1, Box 41, Buckner, Jackson County, Missouri] as a tenant, with her husband and her son Paul, and that on the morning in question she left the house. At about ten minutes to nine after walking her son, she further testified that the back door was locked and the front door was locked by her as she left. Upon her return at approximately ten in response to her son's call she inspected the back door and noticed the hook on said door pulled off the screen door and the door, doorknob and wall damaged, none of which was evident when she left. During cross examination, she testified that nothing was disturbed in the house but that the hook was pulled out of the wall by the back door.

"Paul Wayne Mitchell, being called on behalf of the State testified that he awoke about ten A.M. in his bedroom by a knocking at the front door, noticed a white car in the driveway, saw the man who was knocking motion to a second man in said car, at which point the car was backed up to the front door to a point about 30–40 feet from the front door. The occupant of the car then got out and proceeded with the other man around to the corner of the house where he lost sight of them. The witness identified the defendant as one of the men. The witness proceeded to his parents' bedroom where he procured a shotgun and waited in his parents' bedroom. He then saw a man's torso and face, a man not in the Courtroom and accosted him and told both men to leave the house. The second man he identified as the defendant, both men then left the house. None of the property in the house, among which numbered several small appliances, and guns was removed. The witness testified that after the incident he de-

scribed, he inspected the back door and noticed the hook pulled from the wood of said door casing, but still attached to the eye."

Appellant charges first that the court erred in overruling defendant's motion to suppress testimonial evidence of Paul Mitchell, "as the in court identification * * * was tainted by * * * prior contacts with photographic and line up identifications so as to be unreliable and for the further ground that the defendant was deprived of counsel at what he urges was a critical stage of the proceedings." This point is further delineated by appellant's assertion that the identification of defendant by Paul Mitchell should have been suppressed "following the line of reasoning of" United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, "and the logic of" Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402, "which elaborated on those decisions," and United States v. Zeiler, 3 Cir., 427 F.2d 1305, "which lends its analysis to photographic show ups." Appellant's argument is that an initial photographic view and later lineup contained suggestive elements which "predicated against a fair identification procedure and made the identification of the defendant so prejudicial as to deprive him of due process."

Appellant would support his position with the following statement of evidence from his brief: "Evidence was adduced from Paul Wayne Mitchell with respect to said Motion [to suppress], the witness testified that he occupied a home at Buckner, Missouri on August 12, which at about 10:00 A.M. was entered after a series of knocking by a man, the incident of entry being reported to the authorities at Lake Jacomo, that same day. While at the police station, he viewed four pictures of persons, two of whom have been arrested in connection with the entry aforesaid and made from these an identification. Mr. Mitchell further testified that while the persons aforesaid were in his house, he had occasion to see both of them, the defendant and the co-defendant whose case was disposed of separately, the defendant in the instant case being in the living room. The photographs viewed consisted of black and white polaroid shots of men from the waist up. On cross examination, Mitchell testified that he had been advised, prior to the view of the photographs that the police had two men in custody. He further testified that his identification was in part based upon the dress of one of the photographed suspects and in part upon the fact that there were tattoos in evidence, but that all photographs appeared to be of men of the same race and age. The photographic identification occurred after the witness had had a chance to view all photographs handed to him in a group, laid out. There subsequently occurred a live lineup, in which further identification of the defendant was made. The witness testified that he did have recognition of the defendant at that latter show up as being the same man identified from the photographs. He further testified that his view of the person in his home whom he identified as the defendant in the instant case was for only a fraction of a second, and that tattoos had been mentioned in his initial report to the authorities. The witness testified that impressions gathered from viewing the photographs played a part in the subsequent live lineup identification."

To this should be added:

The four photographs were spread in front of Paul Mitchell with no markings on their faces. He did not examine the reverse side for any markings. One subject was identified by his clothing; the other by memory of his face. His view of the subjects occurred inside the house with "average" light. His ability to identify defendant in the lineup was not affected by prior use of photographs. In addition to seeing defendant in the house, Paul also observed defendant outside the house while in the vicinity of the house for five to ten

minutes. His observations in the house were for less than ten seconds. Detective Rex McGraw also testified at the hearing. According to him, no comment was made to Paul Mitchell concerning the photographs. Detective McGraw also described the circumstances at the lineup when defendant executed a written waiver of his right to counsel at the lineup. Defendant admitted to reading and executing the waiver but asserted a lack of understanding. At trial, Paul Mitchell testified to the descriptions he gave the police which resulted in the arrest of defendant and his partner. He also identified defendant as the subject who backed the car to the front door and who wore a white T-shirt and blue jeans.

In these circumstances, the authorities cited by appellant have no application and his argument fails for a number of reasons.

■ The *per se* exclusionary rule of appellant's authorities applies to violations of constitutional rights by pretrial confrontation conducted after June 12, 1967, where defendant is denied right to counsel and where the confrontation is unnecessarily suggestive. Such rule is not applicable to this case because the evidence shows defendant waived his right to counsel, and there was no evidence before the jury concerning pretrial identification by lineup. And, so far as shown by the transcript, it appears that all confrontations occurred prior to indictment, in which case the *per se* exclusionary rule is inapplicable. State v. Walters, Mo., 457 S.W.2d 817, 818–819[1]; Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411.

Another aspect of exclusion is the rule which requires exclusion of courtroom identification only if it is tainted by pretrial confrontation and there is no independent source for the witness's identification. United States v. Wade, supra; Simmons v. United States, 390 U.S. 377, 88 S. Ct. 967, 19 L.Ed.2d 1247.

■ This rule is also inapplicable in this case because the evidence demonstrates that the witness had an independent basis for his identification. State v. Mentor, Mo., 433 S.W.2d 816. This is supported by the witness's opportunity to view the defendant while in the front yard driving the car, leaving the car, coming toward the house, and, ultimately, in the house. This standard applies to photographic as well as lineup identification. Simmons v. United States, supra; State v. Parker, Mo., 458 S.W.2d 241. Cf. United States v. Zeiler, supra. Full opportunity was given to cross-examine defendant in these respects, and conflicts, if any, were for the jury to resolve. State v. Taylor, Mo., 456 S.W.2d 9. And with respect to the short time, if so, for the witness to view defendant, see United States v. Mooney, 8 Cir., 417 F.2d 936.

■ Appellant charges that the court erred in refusing a requested instruction on burglary, second degree, "as the evidence * * * was insufficient to constitute the offense of burglary, first degree." His argument is that the described entry "is without the sufficient degree of force to constitute the requirement of bursting or breaking set forth in the relevant statute," Section 560.040, V.A.M.S.

It already has been demonstrated that the State made a case of burglary, first degree, against defendant. The house was locked and secured when Mrs. Mitchell left for work; and Detective McGraw "found that the screen door latch or the eye hook had been * * * pulled apart. And also there was several pry marks on the door sill near the door lock." Such force was sufficient to constitute the breaking proscribed by the statute. State v. Hecox, 83 Mo. 531; State v. Henderson, 212 Mo.

208, 110 S.W. 1078; State v. Moore, 117 Mo. 395, 22 S.W. 1086; 12 C.J.S., Burglary, § 3.

Judgment affirmed.

WELBORN, C., concurs.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

All of the Judges concur.