**STATE of Missouri, Respondent,**

v.

**Irwin M. BROWN, Appellant.**

No. KCD 27010.

Missouri Court of Appeals,
Kansas City District.

Aug. 4, 1975.

Motion for Rehearing and/or Transfer
Denied Sept. 2, 1975.

Austin F. Shute, Ronald J. Stites, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Philip M. Koppe, Asst. Atty. Gen., Jefferson City, for respondent.

Before SWOFFORD, P. J., and WELBORN and HIGGINS, Special Judges.

SWOFFORD, Presiding Judge.

A jury found the appellant (defendant) guilty of Robbery First Degree, but was unable to agree as to a sentence. The trial court fixed his sentence at ten years imprisonment.

The defendant raises four points upon which he seeks reversal of his conviction. His fourth point is somewhat unique. He asks this court to consider *all* points raised in his motion for a new trial which he has not raised in his "Points Relied On" nor briefed. A comparison of his new trial motion and his brief discloses that the only allegation in the motion not raised in the brief is that the verdict is not supported by sufficient or substantial evidence. It is a firm principle of law in this state that allegations of error raised in a motion for a new trial, not briefed on appeal, are to be deemed waived or abandoned. Criminal Rule 28.02; *State v. Heitman*, 473 S.W.2d 722, 727–728[4] (Mo.1971); *State v. Sykes*, 436 S.W.2d 32, 33[1] (Mo.1969). Furthermore, the defendant's fourth point wholly fails to meet the requirements of Rule 84.-04(d), made applicable to appeals in criminal cases by Rule 28.18. This point has not been properly preserved for appellate review; nevertheless, a careful reading of the whole record discloses that it is completely without merit.

The remaining three points raised by the defendant may be summarized as: 1) the pretrial identification procedures were unnecessarily suggestive and conducive to irreparable mistake and the trial court erred in denying defendant's motion to suppress such evidence; 2) the trial court erred in giving Instruction No. 6, dealing with the presumption of innocence and burden of proof, in lieu of defendant's proffered Instruction A, which was refused; and 3) the trial court erred in denying defendant's motion for a mistrial or to discharge the jury panel because the prosecutor utilized his peremptory challenges to strike all black veniremen from the jury as a policy of systematic exclusion.

A resolution of these problems requires a summary of some of the evidence in this case.

On November 10, 1972, one Thomas Stanley, a photographer, was assigned by his

employer to Central High School, Kansas City, Missouri, to take photographs of the students. He set his operation up in the gymnasium where the students would pay the fee and have their photographs taken. The fees were being collected by helpers and deposited in a box on a table adjacent to the photographic area. On the morning of that day, Stanley's work was disturbed by the defendant and others and it was necessary for him to "chase" the defendant and others from the vicinity of the cash collections on three or four occasions. At those times, Stanley was within a few feet of the defendant in a clearly lighted area. In the early afternoon, his work that day completed at Central, Stanley with some $700.00 in photographic fee receipts and his other equipment went to his car in the parking lot. There, he was approached by a young man (whom he identified as the defendant) and they discussed yearbook pictures.

Afterwards, Stanley, while leaving the area, had to stop his car to permit the passage of some school children. At that time, a man opened the door on the passenger side, displayed a gun and told Stanley to "Scoot over, the other guy is going to drive." Stanley complied by moving to the center of the front seat. The "other guy" was the defendant. Stanley was then driven around for about twenty minutes, was relieved of the money, his car keys thrown away, and the two persons then left him. Stanley had an extra key which he then used to start his car and was on his way to a telephone to report the robbery when he was involved in a collision which "totaled" out his car and put him in a condition of shock. Stanley was taken to a hospital.

Either at the scene of the automobile accident or at the hospital, Stanley told police that the driver in the robbery was a black male, five feet, nine inches tall, weighing about 150 pounds, and about 18 years old.

In January, 1973, two policemen, one of whom was Detective Floyd Smith, brought about 6 to 10 police photographs to Stanley for him to view. Among the photographs was one of the defendant, which Stanley immediately identified as one of the men who had robbed him. In June, 1973, a lineup was conducted by Detective Smith in which the defendant and three other men were presented. Stanley again identified the defendant as one of the robbers. At the trial, Stanley made a positive, unequivocal identification of the defendant.

█ The record is completely devoid of anything to indicate that the police made any improper or suggestive remarks or engaged in procedures which would in any way taint either the photographic or lineup identification of the defendant by Stanley. On the other hand, the record abounds with facts that form an independent basis for Stanley's in-court identification. His difficulties with defendant at the high school in the morning, his conversation with him in the parking lot, his abduction by the defendant and his armed companion, and sitting beside the defendant in the car during the twenty-minute drive—all in broad daylight, during which the defendant made no attempt to mask himself or prevent Stanley from seeing him—are all facts which form an independent basis for the admission of the in-court identification. *State v. Ramsey*, 477 S.W.2d 88, 90[2, 3] (Mo.1972); *State v. Goshon*, 506 S.W.2d 99 (Mo.App.1974); *State v. Ross*, 502 S.W.2d 241, 246[2] (Mo. 1973). Further, defendant did not object to Stanley's in-court identification and cross-examined him vigorously concerning the circumstances surrounding such identification. Thus, he cannot now assert error in the admission of such in-court identification. *State v. Brownridge*, 459 S.W.2d 317, 320[8] (Mo.1970). Appellant's first point is ruled against him.

The defendant offered Instruction "A", which was refused by the court. Rejected Instruction "A" read as follows:

"The fact that the defendant has been charged with an offense is not evidence, and it creates no inference that any of-

fense was committed or that the defendant is guilty.

The defendant is presumed to be innocent unless and until, during your deliberations upon your verdict, you find him guilty beyond a reasonable doubt. This presumption places upon the state the burden of proving that the defendant is guilty beyond a reasonable doubt.

If all of the evidence or any lack of evidence in this case leaves in your mind a reasonable doubt as to the defendant's guilt, you must return a verdict of 'Not Guilty'."

In its place, the court gave Instruction No. 6, which was submitted by the state. Instruction No. 6, as given, follows:

"The court instructs the jury that the law presumes the innocence and not the guilt of the defendant, and this presumption of innocence attends the defendant throughout the trial, and at the end entitles the defendant to an acquittal, unless the evidence in the case, when taken as a whole, satisfies you of defendant's guilt beyond a reasonable doubt, as defined in these instructions.

The court instructs the jury that if they have a reasonable doubt of defendant's guilt, they should acquit, but a doubt to authorize an acquittal on that ground ought to be a substantial doubt touching defendant's guilt and not a mere possibility of defendant's innocence."

It is the defendant's contention that Instruction No. 6 is not acceptable because (a) it advises that the term "reasonable doubt" will be defined, and then fails to define that term; and (b) employment of the phrase "substantial doubt" shifts the burden of proof from the state to the defendant.

As the defendant recites in his brief, Instruction No. 6 is a "time sanctioned instruction" and one which has survived many challenges. In State v. Lafferty, 416 S.W.2d 157, 161[6, 7] (Mo.1967), it was held that "reasonable doubt" is a simple term and so it is not necessary to define it within the instructions even though the instruction

promised the jury that it would be defined. In State v. Scott, 491 S.W.2d 514, 520[11] (Mo. banc 1973), the Supreme Court of Missouri held that the use of the term "substantial doubt" does not shift the burden of proof to the defendant. See also: State v. Key, 411 S.W.2d 100, 103–104[5] (Mo.1967).

This court also takes notice that the defendant's point two does not state wherein or why the court below erred. Rule 84.04(d) has been again violated and consequently this point was not properly preserved for review. State v. Warren, 469 S.W.2d 662, 663[3] (Mo.App.1971); Supreme Court Rule 28.18. However, the contentions are without merit and defendant's second point is ruled against him.

Defendant's third point relied on is as follows:

"III THE TRIAL COURT ERRED IN OVERRULING DEFENDANT'S MOTION FOR A MISTRIAL OR THAT THE JURY PANEL BE DISCHARGED

(a) The standards set down in State v. Kelly, supra [506 S.W.2d 61 (Mo.App. 1974)], and State v. Davidson (sic), 457 S.W.2d 674 have been met.

(b) The systematic exclusion necessary in Swain v. Alabama has been shown to the Appellate Courts of Missouri."

The background of this point, as shown by the record, is that apparently the prosecutor used seven of his ten peremptory challenges to strike all seven black persons from the jury panel. Thereupon, counsel for the defendant, before the jury was sworn, made an oral motion to discharge the jury and for a mistrial upon the basic ground that "down through the years the prosecuting attorney's office of Jackson County has indulged themselves (sic) in the systematic exclusion of black jurors * * through the peremptory challenges used in the selection of juries in all criminal cases * * *" In denying this request, the trial court commented that the defendant's accomplice in the robbery here involved had been recently tried before the same court

and that a black man had acted as foreman of the jury.

Counsel for defense was obviously (in both his oral motion at the trial and here on appeal) asserting the charge that the state, through the prosecutor, was engaged in the systematic exclusion of blacks as jurors in criminal cases in "case after case" so as to bring his challenge within the case of *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). He asked for no hearing on this matter and offered no evidence to support the charge.

In order to complain on appeal that the prosecutor systematically excludes, by use of peremptory challenges, an identifiable class of persons from jury service, it is first necessary for the defendant to establish at the trial level a *prima facie* case of such systematic exclusion. *Swain v. Alabama*, supra; *State v. Merridith*, 433 S.W.2d 578, 579[2, 3] (Mo.1968); *State v. Kelly*, 506 S.W.2d 61, 63[6] (Mo.App.1974); *State v. Baker*, 524 S.W.2d 122 (Mo. banc— decided June 9, 1975). This record contains only the objections and statements of counsel concerning this charge of systematic exclusion. Objections and statements of counsel are not evidence of the facts, and assertions of counsel during trial do not prove themselves. *State v. Kelly*, supra. Counsel thus did not show a violation of *Swain*, even by his statements. *Swain* requires that such exclusions of blacks is made by means of peremptory challenge "in case after case, whatever the circumstances, whatever the crime and whoever the defendant or the victim may be * * * with the result that no Negroes ever serve on petit juries * * *." 380 U.S. at 223, 85 S.Ct. at 837, 13 L.Ed.2d at 774. See also: *State v. Davison*, 457 S.W.2d 674, 676– 677[5] (Mo.1970); *State v. Collor*, 502 S.W.2d 258, 261[7] (Mo.1973). The defendant's third point is ruled against him.

The judgment is affirmed.

All concur.