**STATE of Missouri, Respondent,**

**v.**

**Dale A. McFADDEN, Appellant.**

**No. KCD 27783.**

Missouri Court of Appeals,
Kansas City District.

Nov. 3, 1975.

Motion for Rehearing and/or Transfer
Denied Dec. 8, 1975.

Thomas M. Larson, Public Defender, R. William Bloemker, Asst. Public Defender, Kansas City, for appellant.

John C. Danforth, Atty. Gen., William F. Arnet, Asst. Atty. Gen., Jefferson City, for respondent.

Before SWOFFORD, P. J., and WELBORN and HIGGINS, Special Judges.

ANDREW J. HIGGINS, Special Judge.

Dale A. McFadden was convicted by a jury of robbery, first degree, by means of a dangerous and deadly weapon, and his punishment was assessed at eighteen years' imprisonment. Sentence and judgment were rendered accordingly. §§ 560.120, 560.135, RSMo 1969, V.A.M.S.

Appellant does not question the sufficiency of evidence to sustain his conviction, and a submissible case may be demonstrated from his statement of the case:

"On June 18, 1974, Michael Jerome Smith was working in the '7–11' convenience store at 1701 Independence Avenue, Kansas City, Missouri. At approximately 2:00 a. m., while Smith was on the telephone, a man entered the store. When the phone conversation was concluded, the man informed Smith that 'this is a stickup' and produced a gun.

"Smith gave the robber about Sixty Dollars ($60) from the cash register. The intruder struck Smith twice with the gun. The man then left the store.

"Another store employee, Thomas Reed Brislan, came into the store and helped Smith off the floor. The two then pressed the alarm button and called the police on the telephone.

"Smith observed the man in a well-lit store for about three or four minutes and described him as a black man, about 6'2" or 6'3", wearing a brown suede jacket and red pants and having no beard or mustache.

"Smith attended a three-man lineup on June 18, and at such lineup identified the Appellant as being the robber.

"Thomas Reed Brislan testified that he was sweeping up in the parking lot of the '7–11' store when he noticed a person loitering around the area, but paid little attention to him. Brislan saw the person enter the store and later come running by him. Brislan noticed the barrel of a gun.

"Brislan entered the store and found Smith, who seemed to have been beaten, lying on the floor. He pressed the alarm button and called the police on the telephone.

"Brislan described the man he saw as wearing a brown suede coat and burgundy 'baggies.' The height of the man was said to be about 5'10" or 5'11".

"The parking lot where Brislan was sweeping was dark, but the area around the store was illuminated.

"Brislan also attended the lineup and identified the Appellant. * * *

"Patrolman James Dearing heard the call regarding the robbery come over the police radio. The suspect was said to be headed southbound, so Dearing proceeded to the area south of the scene and parked his patrol car about two (2) blocks south of the store. Other patrol cars and a helicopter were in the area and were shining lights in an effort to see the robber.

"Dearing observed a silhouette. He moved closer to check this out and observed

a Negro male jump over a porch and into some bushes. He went to the bushes and found a man he identified as the Appellant, wearing a brown suede coat and burgundy pants to come out.

"Dearing detained the Appellant while Patrolman Aichele searched the Appellant and took some money from McFadden's pocket. Dearing watched while Aichele searched the bushes and recovered a .38 caliber revolver and some money. Some ammunition [.38 caliber] was found in McFadden's pocket.

"Police officer James Aichele came to the bushes after Dearing had flushed Appellant out. He entered the bushes and found a gun [.38 caliber] and Fourteen Dollars ($14.00) in currency. He searched the Appellant and found an additional Sixty Dollars and thirty-two cents ($60.32) and 'four .38 caliber shells and one' .38 short. * * *

"The appellant testified that on the night of his arrest he had One Hundred Fifty Dollars ($150) in his possession, which money he had earned from employment. McFadden said he had gone to see a girlfriend in the neighborhood of the '7–11' store. The girl was not home, so appellant was returning to his residence, when he heard an alarm, turned around and was pushed by someone. Appellant had walked passed [sic] the store that evening, but did not go in. He had some bullets in his pocket, but carried them because he was fearful due to the fact he had been shot from a moving automobile about two months prior to his arrest.

"McFadden said that he saw the man who pushed him run to the bushes and threw something in. Appellant thought it was a pistol. He then walked to the bushes to see about it. Appellant went into the bushes. He never touched the gun."

Appellant charges the court erred (I) in failing to grant defendant's motion for mistrial following comment by the prosecuting attorney during closing argument "that the State's witnesses had exercised courage in testifying, because, 'once this trial is over, they will have to be out in the streets again.'"

Appellant argues: "One can only conclude * * * he intended to indicate to the jury that those witnesses faced some threat to their safety or well-being as a result of their decision to testify. The jury must inevitably have had to surmise that the Assistant Prosecuting Attorney was attempting to tell them that the Appellant was likely to cause harm to those who took the witness stand on the State's behalf"; that the defendant was thereby prejudiced because such was speculation as to future acts or conduct of defendant, and that such prejudice went both to guilt and punishment and reversal is required.

In this respect, defendant, in closing, argued: "Now, perhaps the most damaging testimony that we have heard from this witness stand was that of the two employees of the store, Mr. Smith and Mr. Brislan. Now, at the time of the robbery, I would submit to you that they were both scared kids. One was inside the store, he was in fear of his life. Now the Prosecutor submits to you that that increases the accuracy of his identification. I would submit to you that it's just the opposite, that he wasn't thinking of anything else but how he was going to get out of this situation. He didn't know what else was going one [sic]. Now the other was out in the darkened parking lot. The man he says that he observed was in light, but he, himself, was in a darkened parking lot. I submit to you that the situation is not at all comparable to what we have in here today, as far as accuracy of observation goes. I would like to point out a few things that I think are relevant as to the powers of observation of these two individuals who identified the defendant. I think it was apparent from their testimony and the testimony of Detective Thurman that their version of what was going on at the line-up where they identified Dale McFadden and what the realities of the situation of that line-up were are completely different."

In closing, the State argued:

"Mr. Bloemker indicated what a fine young man the defendant is. Well, I submit to you, if you're thinking in terms of mercy for the defendant, think of the mercy he showed Michael Smith when he hit him twice over the head with a gun as he was taking his money, after he already had the money. And think of the risk involved in that situation with that .38 caliber pointed at a man that you're trying to get money from. Think of the risk involved there and what type of case we might have had. It took courage for these witnesses to come in and testify to you, because once this trial is over, they will have to be out on the streets again.

"MR. BLOEMKER [for defendant]: I object to that as improper argument. The inference there is, something is going to happen to them because of what they testified to. There has been absolutely nothing on that whatsoever presented in this trial. THE COURT: Sustained.

"COUNSEL APPROACHED THE BENCH AND THE FOLLOWING PROCEEDINGS WERE HAD:

"MR. BLOEMKER: I'm going to ask, on the basis of that last comment by Mr. Bertram, that a mistrial be declared in this case. THE COURT: Well, it is subject to probably some other interpretation other than the one you're giving it, and I'm going to deny your mistrial. MR. BLOEMKER: Judge, I think the inference is clearly that—he stated they had courage to come in here, he stated that they had to go back out on the streets after this thing is over. The inference is clear, that something is going to happen to them as a result of this trial. I think what he means to infer to the jury is absolutely crystal clear. THE COURT: I'm going to sustain the objection and I'm going to deny the motion for mistrial.

"THE PROCEEDINGS RETURNED TO OPEN COURT.

"MR. BERTRAM: Now you must have the courage, just as these witnesses have, to come in and testify, to do what you know must be done in this case."

 The first part of the State's argument in question was proper in that it is permissible for the State to commend witnesses for having the courage to testify and to comment on their credibility. *State v. Sallee,* 436 S.W.2d 246 (Mo.1969); *State v. Reppley,* 278 Mo. 333, 213 S.W. 477 (1919); *State v. Miles,* 199 Mo. 530, 98 S.W. 25 (1906).

 In its context, the latter portion of the argument in question was, as recognized by the trial court, susceptible to interpretations other than those made by defendant, and " 'a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations.' " *State v. Connell,* 523 S.W.2d 132, 138 (Mo.App.1975).

At the outset of trial, the court, by its Instruction 2 (MAI–CR 2.02) advised the jury that it "must not consider as evidence any statement or remark or argument by any of the attorneys * * *," and at the close of the case by Instruction No. 7 (MAI–CR 2.68) advised the jury that arguments of counsel "are intended to help you in understanding the evidence and applying the law, but they are not evidence."

 In such circumstances, the trial court is not shown to have abused its discretion by refusing to declare a mistrial, a remedy reserved for application in extraordinary circumstances. See *State v. Goff,* 490 S.W.2d 88 (Mo.1973); *State v. Schlagel,* 490 S.W.2d 81 (Mo.1973); *State v. Camper,* 391 S.W.2d 926 (Mo.1965); *State v. James,* 347 S.W.2d 211 (Mo.1961); *State v. Connell,* supra; and compare *State v. Heinrich,* 492 S.W.2d 109 (Mo.App.1973), cited by appellant, where the prosecuting attorney's repeated specific and unambiguous prejudicial comments required reversal as a matter of plain error.

Appellant charges the court erred (II) in overruling his motion to suppress his identification by witnesses Smith and Brislan "because appellant was exhibited to [those] witnesses under unconstitutionally suggestive identification procedures."

 In order for a defendant to preserve such charge of error, he must object to the challenged testimony when proffered at trial. *State v. Franklin,* 448 S.W.2d 583, 584[2] (Mo.1970); *State v. Brownridge,* 459 S.W.2d 317, 320[8] (Mo.1970); *State v. Ward,* 518 S.W.2d 333, 334[3] (Mo.App. 1975); *State v. Brown,* 527 S.W.2d 15 (Mo. App.1975); *State v. Bishop,* 529 S.W.2d 165 (Mo.App.1975). This he did not do and the matter is not for review.

█ Appellant's statement of the case also demonstrates that witnesses Smith and Brislan had an independent basis for their in-court identification of defendant. It is no longer open to argument that if a lineup is in some way tainted or suggestive, and there is an untainted, positive in-court identification made upon a factual basis independent of any lineup procedure, such in-court identification is proper. *State v. Ealey,* 515 S.W.2d 778, 780 (Mo.App.1974). See also *State v. Hudson,* 508 S.W.2d 707 (Mo.App.1974); *State v. Ross,* 502 S.W.2d 241 (Mo.1973); *State v. Carey,* 486 S.W.2d 443 (Mo.1972); *State v. Jackson,* 477 S.W.2d 47 (Mo.1972); *State v. Brownridge, supra.*

Judgment affirmed.

All concur.