**STATE of Missouri, Respondent,**

v.

**Harold R. LAMASTER, Appellant.**

**No. KCD 27359.**

Missouri Court of Appeals, Kansas City District.

March 1, 1976.

Joel Pelofsky, Miniace & Pelofsky, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty Gen., Jefferson City, for respondent.

Before SHANGLER, P. J., and SWOFFORD and SOMERVILLE, JJ.

SOMERVILLE, Judge.

A jury conviction and imposed sentence of eight years imprisonment for robbery, first degree, prompted this appeal. Defendant presents three points in support of his claim for appellate relief. Astringently stated, they are: (1) error in denying his pre-trial motion to suppress evidence of his identification; (2) failure on the part of the trial court, of its own volition and absent a request by defendant, to give MAI–CR 3.52; and (3) the "jury verdict" was "against the weight of the credible evidence."

From the evidence presented at trial, the jury could have reasonably found that on August 23, 1973, one Carol A. Jenkins was employed by U–Totem Corporation at its 63rd and Prospect, Kansas City, Jackson County, Missouri, retail outlet. At approximately 10:15 P.M., while she was the sole attendant on duty, two male subjects entered the store. The shorter of the two (later identified as Terry Dean Saunders) went to the rear of the store and the taller of the two (later identified as Harold R.

Lamaster, the defendant) remained at the candy counter. Ms. Jenkins went to the rear of the store to wait on Saunders. When she did so, she observed that defendant had walked over to the cash register. Thereupon, she walked back to the cash register and Saunders followed her. After arriving back at the cash register she waited for defendant to pay for some items he had selected. Light conditions in the store were "very good"—"lights all across the ceiling"—and while at the cash register she observed defendant, face to face at a distance of some two or three feet, for "a minute or two". During the time period mentioned Ms. Jenkins was apprehensive that the store might be robbed and she concentrated on observing defendant's facial features. Instead of paying for the items he had selected defendant pulled an automatic pistol from his trouser pocket and announced, "This is a robbery. . . Stay down, don't get up and I mean it." Ms. Jenkins took his admonition at face value and dropped to the floor during which time the two men proceeded to relieve the cash register of its contents (some $23.40 in currency and coins, the property of U–Totem Corporation which was in the care and custody of Ms. Jenkins). The two men then fled. Shortly thereafter the police arrived and Ms. Jenkins gave them a description of the two men who had robbed her.

Shortly after being interrogated by the police Ms. Jenkins went down to police headquarters and identified the shorter (Terry Dean Saunders) of the two men who had robbed her from his picture in a high school yearbook. Two days later a detective came to her home and, without a suggestion or suggestions of any kind, displayed six photographs to her. From them, she identified a picture of defendant as the taller of the two men who had robbed her. The six photographs displayed to Ms. Jenkins were marked as exhibits and admitted into evidence. Several days later she viewed a lineup[1] at police headquarters, consisting of defendant and two other male subjects, and again identified defendant as the taller of the two men who had robbed her. A photograph taken of the lineup was marked as an exhibit and admitted into evidence.

To the perplexity of this court, the photographs above mentioned were never made available for consideration on appeal.

During the hearing on defendant's pretrial motion to suppress identification testimony, and, as well, during the course of the trial, Ms. Jenkins positively identified defendant as one of the two men who perpetrated the robbery in question.

■ In view of the posture of the record in this case, defendant's attempt on appeal to attach error to the trial court's denial of his pre-trial motion to suppress any testimony by Ms. Jenkins as to his identification is foreclosed. Defendant, during the course of the trial, at no time ever objected to Ms. Jenkins' positive in-court identification of him, and, moreover, his own counsel extensively cross-examined all of the state's witnesses (including Ms. Jenkins) about the circumstances pertaining to Ms. Jenkins' identification of him as one of the perpetrators of the robbery. Therefore, it is manifest that defendant failed to preserve for appellate review any error claimed to be associated with the trial court's denial of his pre-trial motion to suppress Ms. Jenkins' identification of him. *State v. Brownridge*, 459 S.W.2d 317, 320[8] (Mo.1970); *State v. Ward*, 518 S.W.2d 333, 334[3] (Mo.App.1975); *State v. Brown*, 527 S.W.2d 15, 17[4] (Mo.App.1975); *State v. Bishop*, 529 S.W.2d 165, 166[1] (Mo.App. 1975); and *State v. McFadden*, 530 S.W.2d 440, 444[5–6] (Mo.App.1975). Moreover, the record demonstrates that Ms. Jenkins' positive in-court identification of defendant rested upon a sound factual basis independent of any and all pre-trial instances of

1. Defendant claims that the lineup was impermissibly suggestive because (1) he was the only person in the lineup whose picture had previously been observed by Ms. Jenkins and (2) he was the only person in the lineup wearing "high heel" shoes.

suggestiveness leveled by defendant. Such being the case, Ms. Jenkins' positive in-court identification of defendant was insulated from any crippling taint. See: *State v. Ross*, 502 S.W.2d 241, 246[2] (Mo.1973); *State v. Carey*, 486 S.W.2d 443, 446[2, 4] (Mo.1972); *State v. Jackson*, 477 S.W.2d 47, 51[4] (Mo.1972); *State v. McFadden*, supra, [7]; and *State v. Ealey*, 515 S.W.2d 778, 780[3] (Mo.App.1974).

 Defendant's second point—that the trial court erred in not giving MAI–CR 3.52 (even though never requested by defendant)—is set in the following background. The instruction which the defendant faults the court for not giving of its own volition is captioned "Impeachment or Rehabilitation by Prior Statements of Witnesses Other Than Defendant" and is contained in the "3.00 Series" of MAI–CR which is denominated "Instructions Required If Requested". Anent the subject matter of MAI–CR 3.52, Terry Dean Saunders was called as a witness by defendant. Saunders testified on direct examination that he and an unidentified accomplice robbed the U–Totem Corporation store on the occasion in question. Further, on direct examination, Saunders specifically exculpated defendant from any involvement in the robbery. During the state's cross-examination of Saunders, he denied ever telling Detective Jordan (one of the police officers who investigated the robbery) that defendant was his cohort in the perpetration of the robbery and again reiterated his exculpation of defendant. The state called Detective Jordan as a rebuttal witness. Jordan testified that he interrogated Saunders shortly after the robbery at which time Saunders stated that he and defendant "had pulled the robbery." Defendant made no request, contemporaneously or otherwise, that Detective Jordan's testimony be considered solely for the limited purpose of impeaching or discrediting Saunders' believability as a witness and that it could not be considered as substantive evidence to prove any facts to which it related. In this regard it is significant to note that defendant

conceded in his motion for a new trial that the referenced testimony of Detective Jordan "was offered for the sole purpose of impeaching one of defendant's witnesses [Saunders]." Additionally, defendant, in his brief, unequivocally stated "that the trial court clearly recognized" that the referenced testimony of Detective Jordan "was for impeachment purposes only." Neither of the closing arguments in the case was included in the transcript. Therefore, it is reasonable to assume that the state at no time ever argued that Saunders' prior inconsistent statement constituted substantive evidence to prove defendant's guilt and defendant has not so much as even hinted otherwise.

Defendant candidly admits that he never requested the trial court to give MAI–CR 3.52. The Notes on Use supplemental to MAI–CR 3.52 provide, so far as is here germane, that "MAI–CR 3.52 must be given if requested in the manner provided for in Rule 20.02." Rule 20.02(a) provides, inter alia, that "MAI–CR instructions in the 3.00 Series may be given by the court without a request therefor and shall be given where applicable if requested in the manner provided in this Rule." From the wording of that portion of Rule 20.02(a) just iterated, it is clear that although the trial court could have given MAI–CR 3.52 without a request from defendant to do so, it was not mandatory for it to do so absent a request from defendant. The very language of Rule 20.-02(a) appears to clearly absolve the trial court of any error associated with submission of this case to the jury without the benefit of such an instruction. Defendant, in spite of his admitted dereliction in not requesting the trial court to give MAI–CR 3.52, presses this court to treat the trial court's failure to do so as plain error under the auspices of Rule 27.20(c). Defendant argues that manifest injustice is rife in this case because of its submission to the jury without the benefit of MAI–CR 3.52. This argument has been made and rejected on prior occasions respecting comparable instructions antedating MAI–CR. See: *State*

v. Taylor, 472 S.W.2d 395, 403, 404[9] (Mo. 1971); and State v. Martin, 411 S.W.2d 241, 242, 243[3] (Mo.1967). The crux of defendant's argument therefore does not involve a nascent issue. A careful review of the record in this case fails to indicate anything that would prompt a deviation from the holdings of the cases just cited.

After careful analysis, defendant's third and final point, although somewhat verbose and difficult to fathom, boils down to a contention on defendant's part that the guilty verdict returned by the jury was against the weight of the evidence. So viewed, it is a mere abstract statement which presents nothing for appellate review. State v. Amerson, 518 S.W.2d 29, 31[1] (Mo.1975); and State v. Jackson, 477 S.W.2d 47, 53[11] (Mo.1972). Furthermore, an appellate court has no prerogative to weigh the evidence in a criminal appeal; its scope of review is constricted to a determination of whether there was sufficient substantial evidence to support the verdict. State v. Eaton, 504 S.W.2d 12, 16[6] (Mo. 1973); and State v. Crawley, 478 S.W.2d 344, 345[1] (Mo.1972). The record in this case reveals the presence of sufficient substantial evidence to support the verdict.

Judgment affirmed.

All concur.